UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DURAND GILL,

                Petitioner,

v.                                     Case No. 3:07-cv-82-J-34TEM

WALTER A. MCNEIL,[1]
et al.,

                Respondents.

_____

**<u>ORDER</u>**[2]

**<u>I. Status</u>**

    Petitioner Durand Gill, an inmate of the Florida penal system who is represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on February 8, 2007. He also filed a Memorandum of Law in Support of his Petition (Memorandum of Law) (Doc. #2). Petitioner challenges the revocation of his probation in 2001 on grounds of ineffectiveness for counsel's failure: (1) to move to strike, at the end of the probation revocation hearing, all hearsay testimony as to the allegation of battery upon a fourteen year old, thus failing to preserve the issue for appellate review; (2) to

_____

    [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

    [2] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

argue that there was no corroborating non-hearsay evidence as to this allegation and thus, the court could not find a violation of probation on this basis; and (3) to argue that Petitioner's failure to make a single monthly report was insufficient to constitute a violation of probation because it was not a willful and substantial violation.

Respondents have submitted a memorandum in opposition to the Petition, _see_ Respondents' Response to Petition for Writ of Habeas Corpus (Response) (Doc. #6),[3] and Petitioner has filed a reply brief, _see_ Petitioner's Reply to Response to Show Cause Order (Reply) (Doc. #10). This case is now ripe for review.

## II. Procedural History

On June 20, 2000, Gill was charged by Information with felony domestic battery and shooting or throwing deadly missiles based upon incidents which occurred on May 28, 2000. Resp. Ex. A at 6-7. Petitioner pled guilty to both charges, _id_. at 14-15, 288, and the court, on June 22, 2000, adjudicated him guilty on the domestic battery charge and sentenced him to thirty days of incarceration followed by five years of probation with the special condition that he have no contact with the victim (Shalonda Vinson), _id_. at 16-20, 61-72. With respect to the other charge (shooting or throwing deadly missiles), the court withheld the adjudication of guilt and sentenced Petitioner to five years of probation, to run

---

[3] The Court will refer to Respondents' exhibits as "Resp. Ex."

concurrently with the sentence on the battery charge. <u>Id</u>. at 25, 70-71.

On August 30, 2000, Alycia N. Miller, Gill's probation officer, filed an affidavit of violation of probation. <u>Id</u>. at 8-9. On May 10, 2001, she filed an amended affidavit of violation of probation, dated September 6, 2000, which included the following violations: (1) Gill failed to report to the probation officer in August of 2000; (2) he violated the law by committing a sexual battery upon a sixteen-year old female victim (N. Tookes) on August 8, 2000; and (3) he violated the law by committing a sexual battery upon a fourteen-year old female victim (L. Rivers) on August 15, 2000. <u>Id</u>. at 10-11. Beginning on August 8, 2001, and continuing on August 10, 2001, the Honorable W. Gregg McCaulie conducted a probation revocation hearing on the alleged violations, at which Rodney Gregory represented Durand Gill. <u>See</u> Resp. Ex. A, Transcript of the Probation Revocation Hearing (Tr.).

At the hearing, Alycia Miller testified that Gill was placed under her supervision for two offenses: shooting or throwing deadly missiles and felony battery. <u>Id</u>. at 85-86. She explained that he had been sentenced to five years of probation and that she initially met with him on July 13, 2000, when he was instructed on the conditions of his probation. <u>Id</u>. at 87. She stated that she had informed Gill of ten conditions of probation: (1) every probationer is to report to the probation office (personally

appear) between the 1st and the 5th of every month, id.; (2) the probationer is prohibited from changing his residence or employment or leaving the county of his residence without receiving permission from his probation officer, id. at 88; (3) the probationer is prohibited from possessing or carrying any firearm without the consent of his officer, id.; (4) he is required to live without violating any law while on probation, id.; (5) he will not associate with any person engaged in criminal activity, id.; (6) he will not use intoxicants to excess or use any drugs or narcotics unless prescribed by a physician, nor will he visit places where intoxicants, drugs, or any such substances are unlawfully sold, dispensed or used, id.; (7) he will work diligently at a lawful occupation and advise his employer of his probationary status, id. at 88-89; (8) he "will promptly and truthfully answer all [questions]" directed to him by the court or the officer and allow the officer to visit his home, his employment site or elsewhere, and he will comply with all instructions given by his officer, id. at 89; (9) he will report in person within seventy-two hours when released to the probation officer in Duval County, Florida, unless otherwise instructed by the officer, id.; and (10) he is required to satisfy certain specified monetary obligations, id. Additionally, Miller testified that the special conditions of Gill's probation were that he would not have any violent contact

with the victim, and would attend First Step (an intervention program for those who have committed battery). Id.

Miller testified that she met with Gill twice (July 12th and July 13) when he was in lawful compliance with the terms of the probation. Id. at 90. However, after Gill's failure to report to the probation office between August 1st and 5th (condition one), a new arrest (condition four), and failure to pay the monetary obligations (condition ten), she prepared an affidavit of violation of probation on August 24, 2000. Id. Miller also testified that Gill had failed to participate in the First Step program, a special condition to his probation. Id. at 90, 93. Indeed, Gill had only successfully completed one month of the five-year probation sentence before the alleged violations occurred. Id. at 92.

On cross-examination, Miller acknowledged that she had filed an amended affidavit of violation of probation. Id. at 94. With respect to Gill's failure to report, she explained:

> Normally we tell our probationers when they report between the 1st and the 5th they can see any officer, which is the normal reporting time. However, if they do report outside of that time they do have to see [the assigned probation officer] because they are in violation . . . .

Id. at 95. Miller also acknowledged that while she could have filed an affidavit of violation of probation solely for Gill's failure to report, id. at 96, his failure to pay the monetary obligations, id., or his failure to participate in the First Step

program, _id_. at 97, she did not file the original affidavit of violation of probation until after she had learned about the new criminal charge. _Id_. at 98.

With regard to the August 8, 2000 violation (condition four), N. Tookes, a sixteen-year old female, testified that, in August 2000, when she was between the ages of fourteen and fifteen years old, she was staying with her sister (Shalonda), who was Gill's girlfriend.[4] _Id_. at 104-05. She stated that her sister and Gill lived together in the house on Windle Street. _Id_. at 105. She asserted that, on August 8, 2000, she went to sleep in her sister's bed because her sister had left the house and Gill was not expected home. _Id_. at 106-07. She explained the sexual battery incident as follows: Gill, while nude, entered the bedroom, grabbed her, threw her on the bed and began taking her clothes off, _id_. at 108; Gill forced her to perform oral sex upon him, _id_. at 109; he choked her, _id_.; as she screamed and yelled, he slapped her and told her to shut up while he forced her to have vaginal sex, _id_.; as he held her down, he then forced her to have anal sex, _id_. at 110. The attack lasted approximately one hour and thirty minutes. _Id_. at 111. She stated that when she told her sister two days later, her sister immediately called the police. _Id_. at 111-12. Tookes

---

[4] Ms. Tookes is the younger sister of Shalonda Vinson, the victim of the underlying felony charges (felony domestic battery and shooting or throwing deadly missiles). _See_ Resp. Ex. A at 6-7.

testified that she did not consent to the August 8, 2000 sexual activity. _Id_. at 114.

Next, the State presented the testimony of Mary Elizabeth Guimond, a nurse practitioner and sexual abuse coordinator for the Children's Crisis Center. _Id_. at 133. Guimond stated that, on August 9, 2000, she conducted a gynecological evaluation and "a head to toe evaluation [of Tookes] looking for injuries and looking around the head and the neck and the chest area." _Id_. at 140. While acknowledging that Tookes had "some bruising" on her neck that was consistent with the story Tookes had related to her, Guimond stated there were no fresh vaginal or rectal injuries. _Id_. at 140, 142. She explained that Tookes told her that Gill had used a lubricating cream. _Id_. at 142. She testified that she had received a DNA report from the Florida Department of Law Enforcement which provided that Durand Gill could not be excluded as a possible donor of the semen found on Tookes. _Id_. at 145-46.

Detective Eric Michael Wilder, a sex crimes detective with the Jacksonville Sheriff's Office who had been assigned to the case on August 10, 2000, testified that he first interviewed the victim's sister Ms. Vincent and then interviewed Tookes as part of the investigation. _Id_. at 154-55. Wilder attempted to locate Gill for several weeks and, over the phone, asked Gill to turn himself in, but Gill declined to tell Wilder his location. _Id_. at 158-59. After receiving a tip that Gill was living at the Horizon Hotel,

Wilder arrested Gill on August 28, 2000, and interviewed him about the incident. Id. Wilder stated that Gill, in a written statement, claimed the following: Tookes had asked for forty dollars to have sex with him; Tookes fabricated the sexual assault allegations because Gill refused to give her forty dollars; and he never had sex with Tookes. Id. at 159.

Later, the State called Detective Derrick Lewis, who testified that, on August 16, 2000, he was assigned to investigate a sex crime case involving Gill and a fourteen-year old victim (L. Rivers). Id. at 168. After unsuccessful attempts to locate Rivers, Detective Lewis went to the Children's Crisis Center to review Rivers' videotaped interview, from which he was able to gain an understanding of her sexual battery allegations concerning Gill. Id. at 169-70. When the State asked Detective Lewis about Rivers' allegations contained on the videotape, defense counsel objected based on hearsay. Id. at 171. Addressing the State, the judge inquired: "Why do you want him to tell me what the victim says on the video tape? What's the purpose of him doing that?" Id. The following colloquy ensued.

> [THE STATE]: Your Honor, hearsay is admissible. It can't be the sole basis for a violation, but I think it's important for the Court to hear that there is entirely another case, another victim, in regards to his violation of probation.

I know His Honor has previously sat through an entire trial,[5] but I must make this record include all the allegations and all the proof that was against this defendant. I can't include the transcript of the trial.

So although I can't make it my so[l]e basis to have you violate his probation, I do need to make the Court aware of that.

THE COURT: My question, though, is why are you having him tell me what's on the videotape? Won't [it] be easier just to introduce the videotape and then we'll have the testimony directly from the victim?

[THE STATE]: I don't have any problem playing the videotape for you, sir. It will take me probably -- either I can leave the videotape with you or I can play [it] for you here in open court, whatever is easier.

THE COURT: It would be a lot better evidence than what he remembers of watching the videotape, I think.

[THE STATE]: Would the Court rather have me play it in court or just admit it to the Court?

THE COURT: Well, no, I don't think that you'll have an evidentiary record if I just say I listened to it and/or watched it. So I think it's properly done by playing and the court reporter can take it down.

I'm going to overrule the objection. That's -- whichever way you want to do it is fine I guess by me. But it just seems like that would be better evidence.

---

[5] Before the probation revocation hearing, a jury found Gill not guilty on the charge involving L. Rivers. See Tr. at 378. Rodney Gregory also represented Gill at that trial. See id. at 186.

> [THE STATE]: I will be happy to provide
> that for the Court, sir, and we'll play it in
> open court after this witness.

Id. at 171-73.

Again, defense counsel objected:

> And for the record, we're not stipulating
> to the introduction of playing the videotape.
> If the Court overrules my objection, so be it.
>
> But we're concerned about the lack of
> personal knowledge, lack of confrontation of
> this type [of] information coming before the
> Court as evidence, and the evidence becoming
> the primary basis, which is hearsay rather
> than in-court testimony we can confront in
> this case.

Id. at 173.

Detective Lewis described the investigation he conducted after viewing Rivers' videotaped interview. Specifically, he stated that he spoke to an eyewitness, Elijah Mack,[6] who told him that he had to pull Gill off of Rivers because Rivers did not want to have sex with Gill. Id. at 180, 182. Detective Lewis testified that Mack gave a written statement concerning the events that had transpired on August 15, 2000. Id. at 182. Detective Lewis read Mack's statement.

> Philly [(Durand Gill)] was on the phone
> talking with Tosha [(L. Rivers)] and her
> friend so he called Miss Joyce to pick her up.

---

[6] Elijah Mack pled guilty to lewd and lascivious assault upon a child victim (Rivers) under the age of sixteen and was sentenced to one year of incarceration followed by two years of probation. Resp. Ex. A at 344-45, Deposition.

I rode with Miss [J]oyce because I wanted
something to eat.

So Tosha got into the car and came into
the room. Me and Philly was in the room and
ten minutes later Joe knocked on the door.
Joe came in and all of us were in the room.

So Tosha let me do it. She let Joe do
it. Philly did it for a little bit. So she
tried to stop him but he wouldn't stop. She
started crying so me and Joe pulled Philly
off.

I asked her what was wrong. She wouldn't
tell me. Me and Joe walked out by the pool
and came back to the room. Me and Joe then
went to Denny's to get something to eat.

When we came back to the room Tosha told
us that Philly ate her out to make it even.
Tosha was on the phone telling her girlfriend
how good it was. Then we started joking
around then. She never said anything about a
rape.

Id. at 183-84. Detective Lewis further testified that Mack's

statements were consistent with what he had learned from Rivers'

videotaped interview. Id. at 184.

Thereafter, the State played Rivers' videotaped interview in

open court.[7] Id. at 189-216. Based on the videotape, the victim

was in a motel room with three males: Elijah Mack, Joe and Philly

(Durand Gill). Id. at 191, 195. During the videotape, Rivers

stated that Philly was hurting her and would not get off of her.

Id. at 198.

---

[7] The transcript of Rivers' videotaped interview is not a
verbatim translation due to the poor sound quality of the
videotape. See Tr. at 215.

When the State offered the videotape into evidence, defense counsel again objected, stating:

> Your Honor, we vigorously object to the same; lack of confrontation, lack of ability to talk to the witness.
>
> That tape, for the most part, was inaudible as witnessed by the court reporter being unable to take down what was being said.
>
> I could barely hear what was being said, bits and pieces, words here and there. As to the part centering on the provision regarding what this Philly person who purportedly is my client did or did not do, it was largely inaudible and I could not tell what he was saying.
>
> Yes, we'd object to this copy of this tape as played in this court with the volume turned up to the maximum with three different microphones attempting to broadcast the sound for publication to our ears to be used against my client in any form or fashion.

Id. at 216. While acknowledging the concerns expressed by defense counsel, the judge, over defense counsel's objection, admitted the videotape into evidence. Id. at 217.

On cross-examination, Detective Lewis testified that Mack had told him that he, Joe and Philly (Gill) each had sex with Rivers and that she initially had consensual sex with Gill, but "then she didn't want to anymore." Id. Detective Lewis acknowledged that Joe Kemp (the Joe referred to in the threesome) told him that he never helped Mack pull Gill off Rivers. Id. at 218. Additionally, Detective Lewis acknowledged he was not aware of Mack's 2001 trial

recantations (that Mack did not pull Gill off of Rivers and that he did not see Rivers crying that night).  Id. at 220.

Durand Gill testified at the probation revocation hearing regarding the failure to report in August of 2000, stating:

> I couldn't make it in because my car was broke down.  But she had told me if for some reason I can't make it in, just when I come in to make sure I talk to her.  If I come in between the 1st and the 5th, I could talk to any probation officer.

Id. at 224.  Gill explained that, based on his prior experience in July of 2000, his understanding was that if he failed to report between the 1st and 5th of August, it was permissible if he had a reason and he reported as soon as he could that month.  Id. at 225-26.

With regard to the sexual battery allegations, Gill denied that he sexually battered Tookes.  Id. at 232, 236-37, 269, 282, 285.  He testified that Tookes liked him and flaunted herself in front of him.  Id. at 232.

> [M]any times I've been in the house alone with this girl and this girl really didn't have nothing on and she just be flaunting it and saying little things.  I could have then had sex.  She didn't offer -- if I wanted to pay her to have sex, I could have had sex with her.  She offered before I just -- I wasn't with that.

Id.  He claimed that Tookes fabricated the story because he would not buy a pair of shoes that she asked him to buy.  Id. at 242-43, 268.

Gill also denied that he sexually battered Rivers.  <u>Id</u>. at 282, 285.  Gill noted that, at his jury trial (July of 2001) on Rivers' allegations, Mack had recanted the claims regarding Gill being pulled off of Rivers or Gill attempting to have sex with Rivers.  <u>Id</u>. at 279.  Gill testified that he did not have sex with Rivers because he had chlamydia and  because he and Rivers were arguing and he did not like her attitude.  <u>Id</u>. at 282.  On cross-examination, Petitioner admitted that he was in the motel room all night with Rivers (an under-aged girl), Joe Kemp and Elijah Mack.  <u>Id</u>. at 310, 313-14.

Based on the testimony and evidence presented at the probation revocation hearing, the court, on August 15, 2001, found that Gill violated his probation, stating in pertinent part:

> I think that you had the ability to go and report. **You willfully chose not to report on August 1st -- between the 1st and the 5th.** You had the ability to go around and do pretty much whatever you wanted to and met -- enjoying yourself, but you didn't take it upon yourself to go down there and report to your probation officer.
>
> So that comes to me, that conclusion comes to me based in part on the testimony that was received in these proceedings where it is clear to me that you're just going to do what you want to do in life and not what somebody expects you to do.
>
> And so I think you willfully had the ability -- that you had the ability, as I said, and **you willfully failed to report.**
>
> Additionally, even though you were found not guilty of the charges and the case against

you regarding . . . Rivers, **I find by the
preponderance of the evidence that you did
commit the offense of sexual battery on a
minor.** You knew she was under[-]aged, and,
nevertheless, had sexual intercourse with her.
**And I don't believe your testimony with regard
to what happened with regard to Mrs. Tukes --
Ms. Tukes.**

For those reasons I'm going to sentence
you to 15 years in the Florida State Prison
. . . for violating your probation on the
offense of shooting a deadly missile into an
occupied [vehicle].

Id. at 378-79 (emphasis added); Resp. Ex. A at 40-44, Judgment,

dated August 15, 2001.

On appeal, Petitioner, through counsel, filed a brief pursuant

to Anders v. California, 386 U.S. 738 (1967). Resp. Ex. B. The

appellate court permitted Petitioner to file a pro se brief, in

which Petitioner argued that the circuit court judge erred in

revoking his probation by finding that: (1) Petitioner willfully

and substantially violated his probation because Petitioner's

testimony that he lacked the transportation to be able to report by

August 5th was never disputed by the State, and (2) Petitioner

violated his probation based on the preponderance of the evidence

when the State's only evidence was the hearsay testimony of

Detective Lewis, which should not have been used as the sole basis

for revoking his probation. Resp. Ex. C. The State filed an

answer brief. Resp. Ex. D. On February 16, 2004, the appellate

court affirmed Petitioner's conviction per curiam, see Gill v.

<u>State</u>, 868 So.2d 527 (Fla. 1st DCA 2004), and the mandate issued on March 15, 2004.[8]

On May 10, 2005, Petitioner, through counsel, filed a motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850. In that motion, Petitioner argued that he received ineffective assistance of counsel based upon his attorney's failure: (1) to move to strike, at the end of the probation revocation hearing, all hearsay testimony as to Rivers' allegation, thus failing to preserve the issue for appellate review; (2) to argue that there was no corroborating non-hearsay evidence as to Rivers' allegation, and thus the court could not find a violation of probation on this basis; and (3) to argue that Petitioner's failure to make a single monthly report was insufficient to constitute a violation of probation because it was not a willful and substantial violation. Resp. Ex. E. Petitioner Gill relied upon <u>Moore v. State</u>, 632 So.2d 199 (Fla. 1st DCA 1994) and <u>Carter v. State</u>, 24 Fla. L. Weekly D1063 (Fla. 1st DCA 1999).[9] Resp. Ex. E at 7.

On June 14, 2006, the court denied the Rule 3.850 motion. <u>Id</u>. at 25-30. Gill appealed. <u>Id</u>. at 65. On January 16, 2007, the

---

[8] Online docket, Case No. 1D01-3618, website for the First District Court of Appeal (http://www.1dca.org).

[9] <u>Carter v. State</u>, 24 Fla. L. Weekly D1063 (Fla. 1st DCA 1999), <u>quashed</u> <u>by</u> <u>State v. Carter</u>, 835 So.2d 259 (Fla. 2002), <u>remanded</u> <u>to</u> <u>Carter v. State</u>, 873 So.2d 1292 (Fla. 1st DCA 2004) (finding no abuse of discretion in the trial court's revocation of defendant's probation based solely on defendant's single failure to file a monthly report).

appellate court affirmed the denial per curiam without issuing a written opinion, <u>Gill v. State</u>, 947 So.2d 1164 (Fla. 1st DCA 2007; Resp. Ex. F, and the mandate issued on February 5, 2007. Resp. Ex. F.

## III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Memorandum of Law at 1-2; Response at 11.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted by this Court.

### V. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[10] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[11] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146

---

[10] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[11] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Id</u>. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." <u>Schriro</u>, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." <u>Id</u>. at
687, 104 S.Ct. at 2064. Second, the defendant
must show that counsel's deficient performance
prejudiced him. <u>Id</u>. That is, "[t]he
defendant must show that there is a reasonable
probability that, but for counsel's
unprofessional errors, the result of the
proceeding would have been different. A
reasonable probability is a probability
sufficient to undermine confidence in the
outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.[12]

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir.

2007) (per curiam). "Establishing these two elements is not easy:

'the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far

between.'" <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318,

1322 (11th Cir. 2002) (per curiam) (citations and footnote

omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit has expounded upon the deference due to

counsel's performance as well as to the state court's decision

concerning that performance:

In assessing [Petitioner's] claim that
his trial counsel w[as] ineffective we must
keep in mind that "[j]udicial scrutiny of
counsel's performance must be highly
deferential." <u>Id</u>. at 689, 104 S.Ct. at 2065.
In addition to the deference to counsel's
performance mandated by <u>Strickland</u>, the AEDPA

---

    12 However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved." <u>Davis v. Sec'y
for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

> adds another layer of deference--this one to a
> state court's decision--when we are
> considering whether to grant federal habeas
> relief from a state court's decision.
> <u>Woodford</u>, 537 U.S. at 24, 123 S.Ct. at 360
> (section 2254(d)(1) imposes a "highly
> deferential standard for evaluating
> state-court rulings") (internal marks and
> citation omitted). [Petitioner] must do more
> than satisfy the <u>Strickland</u> standard. He must
> also show that in rejecting his ineffective
> assistance of counsel claim the state court
> "applied <u>Strickland</u> to the facts of his case
> in an objectively unreasonable manner." <u>Bell
> v. Cone</u>, 535 U.S. 685, 699, 122 S.Ct. 1843,
> 1852, 152 L.Ed.2d 914 (2002).

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004), <u>cert</u>.
<u>denied</u>, 544 U.S. 982 (2005).

## VII. Findings of Fact and Conclusions of Law

### A. Ineffectiveness Claims

Petitioner contends that defense counsel was ineffective at the probation revocation hearing. Citing <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973), Respondents claim that "it is questionable whether the petitioner can base an ineffective assistance of counsel claim on counsel's performance at a probation revocation hearing." Response at 16. In response, Petitioner requests that this Court reject Respondents' argument. <u>See</u> Reply at 3.

The United States Supreme Court has stated that there is no absolute right to counsel at a probation revocation hearing; however, due process may require that an attorney be appointed in a particular case. <u>See</u> <u>Gagnon</u>, 411 U.S. at 787-91. Under Florida law, however, defendants are granted the right to counsel in

probation revocation proceedings.  See <u>State v. Hicks</u>, 487 So.2d 22 (Fla. 1985).  Indeed, the Supreme Court of Florida stated:

> The issue in this case is whether a person subject to probation revocation has an absolute right to counsel in such a proceeding, and, if so, whether the right must be afforded him before he is required to admit or deny the revocation charges.  We hold that unless there has been an informed waiver thereof such a person is entitled to counsel, and it must be afforded him before he is required to respond in any manner to the revocation charges.
>
> We note at the outset that there is no constitutional requirement for the appointment of counsel in all probation revocation hearings.  <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). We predicate our decision here on the ground that a uniform rule in all probation revocation hearings is more easily understood and easier to administer than requiring attorneys in some cases but not in others. We do not believe that a uniform requirement will unduly tax the resources of the public defender system; we believe it will result in a more orderly and uniform administration of the criminal justice system.
>
>> FN: Further, a probation revocation usually leads to sentencing; an attorney is required at a sentencing proceeding. It seems illogical not to mandate an attorney when revocation is likely to lead to incarceration and to require an attorney only when the length of that incarceration is being decided.

<u>Id</u>. at 23.

Based on the facts of this case, <u>see</u> Reply at 3, including that there were contested issues at the probation revocation

hearing, the undersigned concludes that Petitioner Gill can proceed on a claim that he received ineffective assistance of counsel at the probation revocation hearing. <u>See</u> Tr. at 79-80 (trial judge's informing Gill of his right to raise ineffectiveness claims in a state court post conviction relief proceeding).

## B. Grounds One and Two

Petitioner Gill's first and second contentions regarding defense counsel (Rodney Gregory) representation relate to the allegation that he violated his probation by committing battery upon a fourteen year old. Specifically, he alleges counsel was ineffective for his failure (1) to move to strike, at the end of the probation revocation hearing, all hearsay testimony as to Rivers' allegations, thus failing to preserve the issue for appellate review, and (2) to argue that there was no corroborating non-hearsay evidence as to Rivers' allegations and that the court could not find a violation of probation as to Rivers' allegations based solely upon hearsay evidence. <u>See</u> Petition at 6; Reply at 1-2. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. The state court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In ground one, the Defendant argues that his counsel was ineffective for failing to move to strike, at the end of the hearing, testimony that the Defendant argues was

23

hearsay. The Defendant contends that the failure of counsel to so move resulted in the issue not being preserved for appeal. The facts of the case, however, reveal that counsel did preserve the issues surrounding such evidence for appeal.

This Court notes while it cannot be the sole basis upon which a revocation of probation may be based, hearsay testimony is allowed in probation violation hearings. Kiess v. State, 642 So. 2d 1141 (Fla. 4th DCA 1994). Although hearsay is allowed, counsel objected at the violation hearing when the State attempted to have Detective Lewis testify as to what . . . Rivers said in relation to her alleged sexual assault by the Defendant, as well as to the introduction into evidence by the State of the videotaped interview of Ms. Rivers in relation to the sexual assault claims. (Exhibit "H," pages 96, 98, 140).[13] Contrary to the Defendant's understanding of preservation of error, this Court notes that counsel's actions were sufficient to preserve the issue of hearsay in relation to the testimony and evidence regarding Ms. Rivers, thus it was not necessary for counsel to move to strike the testimony at the end of the hearing for the purposes of preservation.

Assuming, arguendo, that the trial judge did find that the Defendant violated his probation as to the Ms. Rivers['] allegation based solely on hearsay evidence, and that counsel had not properly preserved the issue for appeal, the Defendant does not allege, much less establish, that had it been preserved, an appellate court would have likely reversed the revocation of his probation on direct appeal. State v. Chattin, 877 So. 2d 747, 749 (Fla. 2d DCA 2004). In addition to the condition attacked in this ground, the trial court found that the Defendant violated two other conditions of his probation, including an

---

[13] See Tr. at 171, 173, 216,

additional new law violation. Furthermore,
while the Defendant claims in the instant
Motion that the trial court did not find that
he had violated his probation regarding the
other violation involving a claim of sexual
assault [upon Tookes], this Court notes that
the Defendant has misstated the facts. In
reciting the reasons for revoking the
Defendant's probation, the trial judge stated
that he believed the testimony of Ms. Rivers,
as well as the testimony of the other alleged
victim over the testimony of the Defendant.[14]
(Exhibit "I," page 5.) As counsel timely
objected to the introduction of hearsay
testimony involving Ms. Rivers and the
allegations of sexual assault, counsel
successfully preserved such issues for appeal.
Furthermore, the Defendant's probation
revocation was based on more than just the one
violation involving Ms. Rivers. Accordingly,
the Defendant has failed to establish error on
the part of counsel, or prejudice to his case.
<u>Strickland v. Washington</u>, 466 U.S. 668, 687
(1984).

Resp. Ex. E at 27-28. On appeal, the appellate court affirmed the

denial per curiam without issuing a written opinion.

As these claims were rejected on the merits by the state trial

and appellate courts, there are qualifying state court decisions.

Thus, these claims should be addressed applying the deferential

standard for federal court review of state court adjudications, as

required by AEDPA. Upon a thorough review of the record and the

applicable law, the undersigned concludes that Petitioner is not

entitled to relief on the basis of these claims because the state

courts' adjudications of these claims were not contrary to clearly

---

[14] <u>See</u> Tr. at 378-79.

established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Indeed, this Court also finds Petitioner's contention with respect to these two grounds to be without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger since he is an experienced criminal defense attorney.[15] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

---

[15] At the August 8, 2001 probation revocation hearing, Rodney Gregory stated that he had practiced law for twenty-two years. <u>See</u> Tr. at 129. The Florida Bar website reflects that Rodney Gregory was admitted to the Florida Bar in 1979. <u>See</u> http://www.floridabar.org.

Before the probation revocation hearing, Rodney Gregory had represented Gill at trial on Rivers' allegations, at which the jury found Gill not guilty on the charge involving Rivers. See Tr. at 186, 378. Indeed, Gregory was familiar with the facts of the Rivers case. The record reflects that Gregory adequately objected to the hearsay evidence (Detective Lewis' testimony as well as the Rivers' videotaped interview). See Tr. at 171, 173, 216. Contrary to Petitioner's contention, although counsel did not move to strike the testimony, a timely specific objection to the State's evidence preserves the issue for appeal. See Thomas v. State, 701 So.2d 891, 892 (Fla. 1st DCA 1997).

Additionally, in his objection, defense counsel articulated his concern that the hearsay evidence "rather than in-court testimony [the defense] can confront in this case" could become the "primary basis" upon which the revocation of probation would be based. Id. at 173. Counsel cannot be faulted for failure to further argue Florida law.[16] The court, as well as the State, had properly articulated the law. See id. at 91-92, 171 (State's acknowledging that hearsay cannot be the "so[l]e basis" for the probation revocation).

---

[16] While hearsay is admissible in probation revocation hearings, it cannot be the sole basis upon which a revocation of probation may be based. See Russell v. State, 982 So.2d 642, 646 (Fla. 2008) (citing Cuciak v. State, 410 So.2d 916, 918 (Fla. 1982)), cert. denied, 129 S.Ct. 272 (2008).

Even assuming arguendo that defense counsel's performance was deficient, Petitioner has not shown prejudice. As previously set forth, the state court judge found that Gill had violated his probation, not only because of the sexual battery upon Rivers (a minor), but because he had sexually battered Tookes. See Tr. at 378-79. The evidence of the sexual battery upon Tookes at the probation revocation hearing included Tookes' direct testimony about the sexual battery as well as Nurse Guimond, who testified about Tookes' injuries. While the court's oral pronouncement was not as clear with regard to the allegations of sexual battery involving Tookes, see id. at 379, it is evident that the court found that Gill had violated his probation based upon not only Gill's sexual battery upon Rivers, but his sexual battery upon Tookes.[17] The court based the probation revocation upon the two sexual batteries as well as the failure to report. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.

Further, even assuming arguendo that defense counsel's performance was deficient for failure to preserve the hearsay argument for appellate review, Petitioner has not shown a

_____

[17] Appellate counsel, on direct appeal, noted that the trial court found Gill had violated the conditions of probation set out in the second affidavit regarding the new law violations. Resp. Ex. B, Initial Brief at 9; see Resp. Ex. A at 10-11, Amended Affidavit.

28

reasonable likelihood of a more favorable outcome on appeal had the claim been preserved and raised.  <u>See</u> <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).[18]  Thus, the ineffectiveness claim is without merit.

## C. Ground Three

Petitioner Gill claims that defense counsel was ineffective for failure to argue that Gill's failure to make a single monthly report was insufficient to constitute a violation of probation because it was not a willful and substantial violation.  As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion.  The state court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In ground two, the Defendant avers that counsel rendered ineffective assistance by failing to argue that the failure to make a single monthly report to the Defendant's probation officer was insufficient as a matter of law to revoke probation. The Defendant argues that he was prejudiced by counsel's failure to argue this point in that, according

---

[18] Petitioner, in his <u>pro</u> <u>se</u> brief on direct appeal, raised this issue (the circuit court judge erred in revoking his probation by finding that he violated his probation based on the preponderance of the evidence when the State's only evidence was the hearsay testimony, which should not have been used as the sole basis for revoking his probation).  <u>See</u> Resp. Ex. C at 4, 10-13. The appellate court per curiam affirmed Petitioner's conviction. <u>See</u> <u>Gill v. State</u>, 868 So.2d 527 (Fla. 1st DCA 2004).

to the Defendant, the trial court would not have found the Defendant in violation of his probation otherwise. This argument, however, is based upon the assumption that the condition discussed in ground one was the only other condition the revocation was based upon, and was similarly not sufficient to revoke the Defendant's probation.

The Defendant is incorrect in his assumption that the failure to file a monthly report is not sufficient to revoke probation as a matter of law. The Florida Supreme Court held that the type of "per se" rule that the Defendant promulgates "strips the trial court of its obligation to assess any alleged violations in the context of a defendant's case." State v. Carter, 835 So.2d 259 (Fla. 2002). Therefore, the failure to file even a single monthly report may, in certain circumstances, justify probation revocation if such failure is willful and substantial and supported by the greater weight of the evidence." Oates v. State, 872 So.2d 351 (Fla. 2d DCA 2004). Furthermore, the "failure to enforce reporting requirements undermines the system and the practical consequence is no control, no supervision, and no protection." Carter, 835 So. 2d at 261.

Moreover, this Court notes that, contrary to the Defendant's allegation, the trial court did not base the probation revocation on the singular failure to make a monthly report. Even assuming, *arguendo,* that the Defendant's understanding of the law was correct, the failure to report, as well as the additional conditions which the trial court found the Defendant to have violated, constituted the basis for revoking the Defendant's probation, not one individual condition. (Exhibit "I," pages 4-5.) As a result, the Defendant has failed to show error on the part of counsel in this regard, or prejudice to his case. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Resp. Ex. E at 28-29.  On appeal, the appellate court affirmed the trial court's decision per curiam without issuing a written opinion.

As with Petitioner's ineffectiveness claims in grounds one and two of the Petition, this claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions, and this claim will be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, the undersigned concludes that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Moreover, this Court similarly finds this ground to be without merit.  Indeed, Petitioner has not shown deficient performance.  At the time of the probation revocation hearing in August of 2001, there was a conflict in the state appellate courts[19] on whether the

---

[19] See Carter v. State, 24 Fla. L. Weekly D1063 (Fla. 1st DCA 1999); Strunk v. State, 728 So.2d 320, 321 (Fla. 5th DCA 1999) (agreeing with the Fourth District Court of Appeal in Schwartz); Schwartz v. State, 719 So.2d 965 (Fla. 4th DCA 1998) ("This Court has repeatedly held that the failure to file a monthly report is a sufficient ground for revocation of probation.") (citations omitted).

failure to file a single monthly report constituted a substantial violation of probation, and the issue was before the Supreme Court of Florida for resolution of that conflict. <u>See</u> <u>State v. Carter</u>, 835 So.2d 259, 260 (Fla. 2002) (citations omitted). Thus, counsel cannot be faulted for failure to raise such an argument.

Petitioner testified at the probation revocation hearing and explained his reasons for not reporting to the probation office between August 1st and August 5th in an effort to demonstrate that the single violation was not willful and substantial. <u>See</u> Tr. at 224-28. However, his probation officer also testified and stated that she could have filed an affidavit of violation of probation solely for Gill's failure to report. <u>Id</u>. at 96.

Even assuming arguendo that defense counsel's performance was deficient for his failure to argue that Petitioner's failure to make a single monthly report was insufficient to constitute a violation of probation because it was not a willful and substantial violation, Petitioner has not shown the resulting prejudice. While Petitioner claimed that he had transportation problems, the court simply rejected Petitioner's explanation, stating:

> I think that you had the ability to go and report. You willfully chose not to report on August 1st -- between the 1st and the 5th. You had the ability to go around and do pretty much whatever you wanted to and met -- enjoying yourself, but you didn't take it upon yourself to go down there and report to your probation officer.

So that comes to me, that conclusion
    comes to me based in part on the testimony
    that was received in these proceedings where
    it is clear to me that you're just going to do
    what you want to do in life and not what
    somebody expects you to do.

        And so I think you willfully had the
    ability -- that you had the ability, as I
    said, and you willfully failed to report.

Id. at 378.

    Gill's assertion that the failure to make a single monthly
report is not sufficient to revoke probation is incorrect.  See
Carter, 835 So.2d 259 (rejecting a per se rule that a probationer's
failure to file a single monthly report can never justify a
probation revocation).  The Supreme Court of Florida stated that
"[t]rial courts must consider each violation on a case-by-case
basis for a determination of whether, under the facts and
circumstances, a particular violation is willful and substantial
and is supported by the greater weight of the evidence."  Id. at
261.  Therefore, complying with Carter, courts "must consider each
case on an individual basis, measuring the willfulness and
substantiality of an alleged violation of probation with regard to
'whether the defendant has made reasonable efforts to comply with
the terms and conditions of . . . probation.'"  Marzendorfer v.
State, 976 So.2d 596, 598 (Fla. 1st DCA 2007) (citation omitted).

    Indeed, contrary to Petitioner's contention, the failure to
file even a single monthly report may, in certain circumstances,
justify probation revocation if such failure is willful and

substantial and supported by the greater weight of the evidence. Thus, Petitioner Gill has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Based on the record, the ineffectiveness claim is without merit.

## VIII. Conclusion

"Under the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009). Any claims not specifically addressed are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1

If Petitioner appeals the denial of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542

34

U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.  The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.  The Clerk of the Court shall close this case.

4. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of February, 2010.

MARCIA MORALES HOWARD
United States District Judge

sc 2/25
c:
Counsel of Record